**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BEAVEX HOLDING CORPORATION, *et al.*,[1] | Case No. 19-10316 (___) |
| Debtors. | Joint Administration Requested |

**DEBTORS' MOTION, PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE
BANKRUPTCY CODE FOR ENTRY OF: (I) AN ORDER (A) APPROVING AND
AUTHORIZING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (B) APPROVING AND
AUTHORIZING THE BID PROTECTIONS, (C) SCHEDULING THE RELATED
AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE,
(D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
(E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND
(F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) AUTHORIZING THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING
AND APPROVING THE DEBTORS' PERFORMANCE UNDER THE ASSET PURCHASE
AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED
LEASES RELATED THERETO AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby submit this motion (the "Motion")[2] for the entry of (i) an order, substantially in the form

attached hereto as Exhibit A (the "Bidding Procedures Order"), (a) approving and authorizing

certain bidding procedures substantially in the form attached to the Bidding Procedures Order as

Exhibit 1 (the "Bidding Procedures,") in connection with the sale (the "Sale") of substantially all

of the Debtors' assets (the "Assets") (or any combination of subset(s) thereof), pursuant to that

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: BeavEx Holding Corporation (7740); BeavEx Acquisition, Inc. (5497); BeavEx Incorporated (7355); JNJW Enterprises, Inc. (4963); and USXP, LLC (2997). The headquarters for the above-captioned Debtors is located at 2120 Powers Ferry Road SE, Suite 300, Atlanta, GA 30339.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

certain Asset Purchase Agreement, by and among the Debtors and TForce Final Mile, LLC,

TForce Final Mile West, LLC and TForce Logistics, LLC (collectively, "TForce" or the "Lead

Bidder"), substantially in the form attached hereto as Exhibit B (the "Lead Agreement" or "APA"),

subject to the outcome of an auction (the "Auction"), (b) approving and authorizing the Debtors to

pay the Lead Bidder a fee of $180,000 (the "Break-Up Fee") and an expense reimbursement of no

more than $150,000 (the "Expense Reimbursement," and, together with the Break-Up Fee, the

"Bid Protections") when and if payable pursuant to the terms of the APA, (c) scheduling the

Auction and hearing to consider approval of the Sale, (d) approving procedures related to the

assumption and assignment of certain of the Debtors' executory contracts and unexpired leases

(the "Assumption and Assignment Procedures"), (e) approving the form and manner of notice

thereof and (f) granting related relief; and (ii) an order, substantially in the form attached hereto as

Exhibit C (the "Sale Order"), (a) authorizing the sale of the Assets (or any combination of

subset(s) thereof) free and clear of liens, claims, encumbrances, and other interests, except as

provided by the APA or a Modified APA (as defined herein), (b) authorizing and approving the

Debtors' performance under the APA or a Modified APA, (c) approving the assumption and

assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and

(d) granting related relief.  The facts and circumstances supporting this Motion are set forth in the

concurrently filed *Declaration of Donald Van der Wiel In Support of Debtors' Chapter 11

Petitions and First Day Motions* (the "First Day Declaration").  In further support of this Motion,

the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, and the Amended Standing Order of Reference from the United States District Court for the

District of Delaware, dated February 29, 2012 (the "Amended Standing Order").  This is a core

01:23656502.7

2

proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory and legal predicates for the relief sought herein are sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2002-1 and 6004-1.

## BACKGROUND

3.        On the date hereof, (the "Petition Date"), each of the Debtors commenced a voluntary case under the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or examiner.

4.        Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

5.        By this Motion, the Debtors request that the Court enter (i) the Bidding Procedures Order (a) approving and authorizing the Bidding Procedures, (b) approving and authorizing the payment of the Bid Protections, (c) scheduling the Auction and hearing to consider

approval of the Sale, (d) approving the Assumption and Assignment Procedures, (e) approving the form and manner of notice thereof, and (f) granting related relief; and (ii) the Sale Order (a) approving the Sale free and clear of all liens, claims, encumbrances, and other interests to the party or parties submitting the highest or otherwise best bid(s) for the Assets (or any combination of subset(s) thereof), (b) approving the assumption, assignment and sale of certain executory contracts and unexpired leases (and related cure amounts), (c) authorizing and approving the Debtors' performance under the APA or a Modified APA, and (d) granting related relief.

## EVENTS LEADING TO THE SALE

6.      The Debtors' business consists of two business operations: namely, their transportation, warehousing and courier services (the "Core BeavEx Business") and their medical logistics support services (the "Medical Logistics Business"), which is operated by the BeavEx Incorporated's Guardian Medical Logistics Division ("GML Division").

7.      Through their operating entities, the Debtors have become a leading provider of ground and air transportation, warehousing and courier services, providing "last mile" delivery services, often consisting of controlled substances or otherwise highly sensitive materials to over 800 customers nationwide.  To that end, the Debtors contract with approximately 2,200 non-employee independent contract couriers (the "Contract Couriers"), many of whom require certain security clearance or certifications, to transport their packages to and from their customers and/or the Debtors' terminals to the end-users.  As a result of the Debtors' vast network of warehouses, Contract Couriers, dedicated full and part-time employees and temporary employees, the Debtors are able to provide their customers with time-critical, same day transportation (including air transportation).  Through their vast operations, the Debtors are able to provide this same-day delivery service to more than 77% of the U.S. population and next-day service to approximately 97% of the U.S. population.

8.      In addition to the Debtors' ground and air transportation services that are part of the Core BeavEx Business, the GML Division also provides medical logistics services related to:  (i) on-site drug and alcohol testing that includes random, pre-employment and post-incident blood/alcohol testing; (ii) on-site phlebotomy services; (iii) biometric and phlebotomy venipuncture draws related to company wellness programs and (iv) policy development and assessment of alcohol and drug testing programs (the "GML Services").  To that end, the Debtors contract with approximately 900 non-employee third-party service providers (the "Third-Party Service Providers") who provide the GML Services to the Debtors' customers nationwide.  As a result of network of Third-Party Service Providers, the Debtors have become the nation's largest provider of medical logistics services dedicated solely to the medical industry.

9.      In September 2018, the Debtors, in consultation with their legal and financial advisors, began exploring several potential transactions through which to sell all or substantial parts of their business.  To that end, the Debtors engaged G2 Capital Advisors ("G2") to conduct an extensive and comprehensive marketing process.  The Debtors, through G2, conducted a targeted solicitation by reaching out to approximately fifty-seven (57) potential acquiring parties, distributing an executive summary to twenty-four (24) of those parties who expressed an interest in acquiring all or a portion of the Debtors' assets.

10.      As part of this marketing process, the Debtors and their advisors set up an electronic data room with confidential business information, and potential bidders were granted access in order to perform the necessary diligence.  As a result of the marketing efforts, the Debtors received nine (9) indications of interest.  The Debtors determined that seven (7) of those indications of interests fairly reflected the Debtors' valuation and should be advanced to the next stage of the marketing process which included on-site meetings with the Debtors.  The Debtors

ultimately received four (4) written letters of interest ("LOIs") for the purchase of some or substantially all of their assets, one of which included the LOI from the Lead Bidder.

11.      After evaluating the LOI's, the Debtors, in consultation with their legal and financial advisors, determined that a sale of all or substantially all of their assets, was the best way to maximize the value of their estates for their creditors and other parties in interest.  On February 14, 2019, BeavEx Incorporated, JNJW Enterprises, Inc. and USXP, LLC (the "Seller") entered into the APA with the Lead Bidder for the sale of the Assets.  The APA evidences a value-maximizing bid of cash in the approximate amount of $7.2 million, plus assumption of certain liabilities.  The APA preserves the Debtors' business as a going concern.  Moreover, it will also provide for substantial number of the Debtors' employees to keep their jobs on substantially the same terms and conditions under which they are currently employed and for the assumption of a substantial number of service agreements with the Contract Couriers and Third-Party Service Providers.  The APA is not conditioned on financing or the completion of due diligence.

## THE ASSET PURCHASE AGREEMENT

12.      The Debtors are seeking approval of the APA, which will also serve as the form asset purchase agreement to be provided to all prospective bidders (each, a "Potential Bidder") that wish to participate in the Bidding Process (as defined herein).  Among other requirements, each Potential Bidder will be required to submit an executed copy of a modified APA (each, a "Modified APA") to the Debtors reflecting the terms upon which the Potential Bidder would agree to purchase the Acquired Assets (or any combination of subset(s) of the Assets and assume certain liabilities.  The Debtors propose that the deadline for submitting a Modified APA shall be twenty-five (25) days following entry of the Bidding Procedures Order (the "Bid Deadline").

01:23656502.7

13.     Key terms of the APA are highlighted below, including terms to be highlighted in accordance with Local Rule 6004-1(b):[3]

i.      **Purchase Price**.  The purchase price (the "<u>Purchase Price</u>") for the purchase, sale, assignment, and conveyance of Seller's right, title, and interest in, to, and under the Acquired Assets shall consist of:

   a.  cash in an amount equal to Seven Million Two Hundred Four Thousand Nine Hundred Eighty-Seven Dollars ($7,204,987) (the "<u>Cash Purchase Price</u>"); <u>plus</u>;

   b.  assumption of the Assumed Liabilities; and

   c.  any other consideration provided under the APA.

APA, § 3.1.

ii.     **Agreements with Management**.  Prior to the Closing, Buyer shall provide (or cause one of its Affiliates to provide) to substantially all Business Employees on the Transferred Employee List an offer (the "<u>Employment Offer</u>") of employment, each on terms (with respects to wage level and benefits) which are substantially similar to the terms such Business Employee was subject to prior to the date hereof.  Each Business Employee who accepts Buyer's offer of employment and who becomes an employee of Buyer or of one of its Affiliates shall be a "<u>Transferred Employee</u>."  Seller shall cooperate with Buyer in effecting the Transferred Employees' transfer of employment from Seller to Buyer or a Buyer Subsidiary as contemplated hereby.  APA, § 7.4(b).

iii.    **No Solicitation**.  Buyer agrees and acknowledges that (i) Seller and its Affiliates shall be permitted, and shall be permitted to cause their Representatives, to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, respond to any unsolicited inquiries, proposals or offers submitted by, and enter into any discussions or negotiations regarding any of the foregoing with, any Person (in addition to Buyer and its Affiliates, agents and Representatives) in accordance with the terms of the Sale Procedures Order; and (ii) the Sale Procedures approved by the Sale Procedures Order may be supplemented by other customary procedures not inconsistent with the matters otherwise set forth therein and the terms of the Agreement.  APA, § 7.3(g).

iv.     **Closing and Other Deadlines**.  The Closing of the sale of the Acquired Assets and the assumption of the Assumed Liabilities contemplated thereby

---

[3]  Capitalized terms used in this paragraph, but not otherwise defined herein shall have the meaning ascribed to them in APA.  To the extent there are any ambiguities or inconsistencies between this summary and the APA, the APA shall govern in all respects.

shall take place electronically, no later than the first Business Day following the date on which the conditions set forth in Article IX and Article X of the APA have been satisfied or (if permissible) waived (other than the conditions which by their nature are to be satisfied by actions taken at the Closing, but subject to the satisfaction or (if permissible) waiver of such conditions), or at such other place or time as Buyer and Seller may mutually agree.  The date and time at which the Closing actually occurs is referred to as the "Closing Date.  APA, § 4.1.  The Agreement may be terminated at any time prior to the Closing Date, if by mutual consent of the parties.  APA, § 11.1(c).

The Agreement may be terminated by the Buyer in the event of any breach by Seller of any of its agreements, covenants, representations, or warranties contained herein (provided such breach would result in the failure of a condition set forth in Section 9.1 or Section 9.2 to be satisfied), and the failure of Seller to cure such breach by the earlier of (A) the first Business Day before the Outside Date and (B) the date that is ten (10) Business Days after the date of receipt of the Buyer Termination Notice; provided, however, that (1) Buyer is not in material breach of any of its representations, warranties, covenants or agreements contained herein, (2) Buyer notifies Seller in writing (the "Buyer Termination Notice") of its intention to exercise its rights under Section 11.1(c)(i) as a result of the breach, and (3) Buyer specifies in the Buyer Termination Notice the representations, warranties, covenants, and agreements contained herein of which Seller is allegedly in breach.  APA, § 11.1(c).

The Agreement may be terminated by the Seller in the event of any material breach by Buyer of any of its agreements, covenants, representations or warranties contained herein (provided such breach would result in the failure of a condition set forth in Section 10.1 or Section 10.2 to be satisfied), and the failure of Buyer to cure such breach by the earlier of (A) the first Business Day before the Outside Date and (B) the date that is ten (10) Business Days after the date of receipt of the Seller Termination Notice; provided, however, that Seller (1) is not in material breach of any of its representations, warranties, covenants or agreements contained herein, (2) notifies Buyer in writing (the "Seller Termination Notice") of its intention to exercise its rights under Section 11.1(d)(i) as a result of the breach, and (3) specifies in Seller Termination Notice the representations, warranties, covenants, or agreements contained herein of which Buyer is allegedly in breach.  APA, § 11.1(d).

The Seller's and Buyer's obligations to consummate the Closing are subject to the satisfaction or waiver on or prior to the Closing Date of certain conditions, including, but not limited to, the following:

a.  Accuracy of Representations.  Each of the representations and warranties of Seller contained in the Agreement shall be true and correct

in accordance with its terms as of the signing of the Agreement. At and as of the Closing, each of the representations and warranties of Seller contained in the Agreement shall be true and correct in all material respects, except for those representations and warranties which are qualified by "materiality" or "Material Adverse Effect" requirements, which shall be true in all respects. Seller shall have delivered to Buyer a certificate, dated as of the Closing Date, executed on behalf of Seller by an authorized executive officer thereof, certifying that the conditions specified above have been fulfilled. APA, § 9.1.

b.  <u>Seller's Performance</u>. Seller shall have performed and complied with in all material respects the covenants and agreements that Seller is required to perform or comply with pursuant to the Agreement at or prior to the Closing and, since the Execution Date, there shall not have occurred any Material Adverse Effect, and Buyer shall have received a certificate of Seller to such effect signed by a duly authorized officer thereof. APA, § 9.2.

c.  <u>No Closing Legal Impediment</u>. No Governmental Authority shall have enacted, issued, promulgated or entered any Order which is in effect and has the effect of making illegal or otherwise prohibiting the consummation of the transactions contemplated by the Agreement (a "<u>Closing Legal Impediment</u>"). APA, § 9.3.

d.  <u>Seller's Deliveries</u>. Each of the deliveries required to be made to Buyer pursuant to <u>Section 4.3</u> shall have been so delivered. APA, § 9.4.

e.  <u>Effective Date and Sale Order</u>. The Effective Date shall have occurred, the Bankruptcy Court shall have entered the Sale Order in a form reasonably acceptable to Buyer and reasonably acceptable to Seller, and the Sale Procedures Order and Sale Order shall be Final Orders. APA, § 9.5.

f.  <u>Break-Up Fee and Expense Reimbursement</u>. The Bankruptcy Court shall have approved the Break-Up Fee and the Expense Reimbursement Amount in the Sale Procedures Order. APA, § 9.6.

g.  <u>Acquired Assets, Assumed Contracts and Assumed Leases, Cure Claims</u>. All Acquired Assets shall be delivered and/or assigned to Buyer. The Bankruptcy Court shall have approved and authorized the assumption and assignment of each Assumed Liability, Assumed Contract and Assumed Lease, unless Buyer waives this requirement with respect to any Assumed Contract or Assumed Lease. APA, § 9.7.

h.  <u>Government Consents</u>. All filings, notices, licenses, permits and other consents of, to or with, any Governmental Authority or any Person that are required: (i) to permit Seller to perform the transactions

contemplated by the Agreement; or (ii) in order to prevent a material breach of or material default under or a right of termination or material modification of any Assumed Contract or Assumed Lease, in each case as set forth in Schedule 9.8, shall have been duly made or obtained and, in the case of Governmental Authorities, shall no longer be subject to administrative or judicial appeal, review or reconsideration, if any. No consent to the assumption, assignment, or sale of any Assumed Contract or Assumed Lease shall be required if the Sale Order expressly provides that Seller has the power to assume, assign, or sell such Assumed Contract under Section 365 of the Bankruptcy Code without such consent. APA, § 9.8.

v. **Cash Deposit**. On the Execution Date, Buyer will deliver to the Escrow Agent, pursuant to the terms of the Escrow Agreement, an amount equal to Seven Hundred Twenty Thousand Four Hundred Ninety-Eight and 77/100 Dollars ($720,498.70), representing ten percent (10%) of the Cash Purchase Price. Any fees or costs payable to the Escrow Agent or in connection with the Escrow Agreement shall be divided evenly and payable one-half by Buyer and one-half by Seller. The amount held in escrow by the Escrow Agent pursuant to the Escrow Agreement (the "Cash Deposit") shall be held by the Escrow Agent pursuant to the terms of the APA. APA, § 3.2.

vi. **Record Retention**. Documents, attorney-client privileged communications, work product of Seller's attorneys regarding any Excluded Assets or prepared in connection with the Agreement, or the transactions contemplated hereby or relating to the Chapter 11 Cases, any interim or Final Orders, and any Documents that Seller is required by Law to retain, and corporate or other entity filings, but not including any Documents (including without limitation, any attorney-client privileged communications and work product of attorney) included as Acquired Assets pursuant to Section 2.1(j); provided, however, that Buyer shall have the right, to the extent permitted by applicable Law, to make copies of any portions of such retained books, records, and documents that relate to the Acquired Assets. APA, § 2.2(c).

vii. **Sale of Avoidance Actions**. The Acquired Assets include the claims under chapter 5 of the Bankruptcy Code or under state fraudulent conveyance, fraudulent transfer, or similar laws. APA, § 1.1; § 2.1.

viii. **Limitations on Successor Liability**. By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Seller or their respective estates, there is no continuity between the Buyer and the Debtors, there is no common identity between the Seller and the Buyer, there is no continuity of enterprise between the Seller and the Buyer, and the Buyer is not a mere continuation of the Seller or their estates, (ii) the Buyer is not holding itself out to the public as a continuation of the Seller or their respective estates and (iii) the Sale does not amount to a consolidation or *de facto* merger of

01:23656502.7

10

the Buyer and the Seller and/or the Seller's estates. Accordingly, the Buyer is not and will not be deemed a successor to the Seller as a result of the consummation of the Sale contemplated by the APA. Proposed Sale Order, § V.B.

ix.     **Sale Free and Clear of Unexpired Leases**. Seller shall assume and assign or sell all Assumed Contracts and Assumed Leases to Buyer, and Buyer shall assume or purchase all Assumed Contracts and Assumed Leases from Seller, as of the Closing Date, pursuant to the Sale Order. In connection with such assignment, assumption, or sale, Buyer shall assume on the Closing Date, any Assumed Liabilities. In the case of Assumed Leases, Assumed Contracts and other assets included in the Acquired Assets (a) that cannot be sold or assigned effectively without the consent of third parties, which consent has not been obtained prior to the Closing (after giving effect to the Sale Order and the Bankruptcy Code), Seller shall, subject to any approval of the Bankruptcy Court that may be required, cooperate with Buyer in all reasonable respects to obtain such consent, or (b) that are otherwise not capable of sale or assignment (after giving effect to the Sale Order and the Bankruptcy Code), Seller shall, subject to any approval of the Bankruptcy Court that may be required, reasonably cooperate with Buyer to provide to Buyer the benefits thereof in some other reasonable manner (including the exercise of the rights of Seller thereunder); provided, however, that Seller's obligations pursuant to this sentence shall be at no cost to Seller and shall not extend for a period beyond the earliest of (x) the expiration of the term of the applicable Assumed Lease, Assumed Contract, or other asset; and (y) the first anniversary of the Closing. APA, § 2.5.

x.      **Bid Protections**. If, following the Effective Date, the Agreement is terminated pursuant to Section 11.1(b)(iv) or Section 11.1(e), then Seller shall pay in cash to Buyer, subject to the consummation of the Alternative Transaction and not later than fifteen (15) days following the closing of such Alternative Transaction, a break-up fee in an amount equal to $180,000 (the "Break-Up Fee") payable from the proceeds of such Alternative Transaction by wire transfer of immediately available funds to the account specified by Buyer to Seller in writing. APA, § 11.3.

xi.     **Relief from Bankruptcy Rule 6004(h)**. Time is of the essence in consummating the Sale. Notwithstanding the applicability of Bankruptcy Rule 6004, the terms and conditions of both the Bidding Procedures Order and Sale Order shall be immediately effective and enforceable. Bidding Procedures Order § 25; Sale Order § 29.

## THE BIDDING PROCEDURES

14.     By this Motion, the Debtors request entry of the Bidding Procedures Order,

which will, among other things, establish the following timeline:[4]

| Proposed Sale Timeline | |
|---|---|
| Deadline to Serve Sale Notice and Cure Notice | Within two (2) Business Days[5] after entry of the Bidding Procedures Order |
| Cure Objection Deadline and Assignment Objection Deadline | Within ten (10) days after service of Cure Notice |
| Bid Deadline | Twenty-five (25) days after entry of Bidding Procedures Order |
| Sale Objection Deadline | Twenty-Five (25) days after entry of the Bidding Procedures Order |
| Deadline to Notify Qualified Bidders | One (1) Business Day after Bid Deadline |
| Auction (if required) | Two (2) Business Days after Bid Deadline |
| Notice of Successful Bidder | One (1) Business Day after Auction |
| Sale Reply Deadline | Two (2) days prior to the Sale Hearing |
| Sale Hearing | No later than five (5) Business Days after the Bid Deadline |

15.     The Bidding Procedures are designed to maximize value for the Debtors'

estates while ensuring an orderly sale process.  The Bidding Procedures describe, among other

things, the procedures for parties to access due diligence, the manner in which Potential Bidders

and bids become "qualified," the procedures for receipt and negotiation of bids received, the

conduct of any auction, the selection and approval of any ultimately successful bidders, and related

---

[4]  Capitalized terms used in this paragraph, but not otherwise defined shall have the meaning ascribed to them in the Bidding Procedures. To the extent there are any ambiguities or inconsistencies between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern in all respects.

[5]  As used herein, "Business Day" means any day other than Saturday, Sunday or legal holiday.

deadlines (collectively, the "Bidding Process").  The Bidding Process affords the Debtors a

sufficient opportunity to pursue a robust sale process that will maximize the value of their Assets

for the benefit of their estates, their creditors and other parties in interest.

        16.    Certain of the key terms of the Bidding Procedures are highlighted below, in

accordance with Local Rule 6004-1(c):[6]]

    i.    **Diligence**:  The Debtors will afford any Qualified Bidder such due diligence access or additional information as the Debtors, in consultation with their advisors, the prepetition secured lender and proposed postpetition secured lender and any statutorily appointed committee (if any), deem appropriate, in their reasonable discretion, subject to contractual obligations to limit access to certain proprietary information; provided, however, the Debtors will, in their reasonable discretion, make reasonable commercial efforts to provide Qualified Bidders with the same information provided to the Lead Bidder.

        The due diligence period shall end on the Bid Deadline, and the Debtors shall not furnish any due diligence information to any Qualified Bidder (other than the Successful Bidder) after the Bid Deadline.  For the avoidance of doubt, neither the Debtors nor any of their respective representatives shall be obligated to furnish any due diligence information to any person other than a Qualified Bidder.

    ii.    **Bid Deadline**:  A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"):  (i) the Debtors, 2120 Powers Ferry Road SE, Suite 300, Atlanta, GA 30339 (Attn. Donald Van der Wiel (dvanderwiel@beavex.com)), (ii) counsel to the Debtors:  Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn:  Joseph M. Barry, Esq. (jbarry@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), and Donald J. Bowman, Jr., Esq. (dbowman@ycst.com)), (iii) counsel to DIP Lender, Winston Strawn, LLP, 200 Park Avenue, New York, NY 10166 (Attn. Carey D. Schreiber, Esq. (cschreiber@winston.com)), (iv) co-counsel to postpetition lenders, Ashby & Geddes, P.A. (Attn. Gregory Taylor, Esq. (gtaylor@ashbygeddes.com)), (v) counsel to the Lead Bidder: Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112 (Attn. Emanuel Grillo, Esq. (emanuel.grillo@bakerbotts.com)), and (vi) counsel to any statutorily appointed committee in the Chapter 11 Cases (collectively, the "Notice Parties"), so as to be received by the Notice Parties not later

---

[6]  Capitalized terms used in this paragraph, but not otherwise defined shall have the meaning ascribed to them in the Bidding Procedures. To the extent there are any ambiguities or inconsistencies between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern in all respects.

than 4:00 p.m. (prevailing Eastern Time) on [__], 2019 (the "Bid Deadline").

iii.   **Qualified Bidder**:  A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):

a.   it fully discloses the identity of the Qualified Bidder;

b.   it states that the applicable Qualified Bidder offers to purchase, in cash or other consideration, the Assets (or any combination of subset(s) thereof) upon terms and conditions that the Debtors reasonably determine, after consultation with the Consultation Parties, are at least as favorable to the Debtors as those set forth in the APA, and it provides a description of any anticipated regulatory or governmental approvals necessary to consummate the bid;

c.   it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder(s), provided that if such bidder is selected as a Successful Bidder(s) its offer shall remain irrevocable until the earlier of (a) the closing of the sale to the Successful Bidder, and (b) sixty (60) days after entry of the Sale Order.  Such writing shall guaranty performance of the Qualified Bidder by its parent entities, if any, or provide such other guaranty of performance acceptable to Debtors in their reasonable discretion;

d.   confirmation that all necessary internal and shareholder approvals have been obtained prior to the bid;

e.   it includes a duly authorized and executed copy of an asset purchase agreement, including the purchase price for the Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the APA (the "Proposed Asset Purchase Agreement") and the proposed form of sale approval order to approve the sale by the Bankruptcy Court, together with a copy marked to show amendments and modifications to the proposed form of sale approval order attached to the Approval Motion; provided however, that such Proposed Asset Purchase Agreement shall not include any financing or diligence conditions;

f.   it includes written evidence of sufficient cash on hand to fund the purchase price or sources of immediately available funds that are not conditioned on third party approvals or commitments, that will allow the Debtors to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Proposed Asset Purchase

Agreement; such written evidence shall include the most current audited and the most current unaudited financial statements, or such other financial information as may be acceptable to the Debtors in their reasonable discretion after consultation with the Consultation Parties (collectively, the "Financials") of the Qualified Bidder, or, if the Qualified Bidder is an entity formed for the purpose of acquiring the Assets, the Financials of the Qualified Bidder's equity holder(s) or other financial backer(s) that are guaranteeing the Qualified Bidder's performance;

g.    if such bid is for the same assets, and on the substantially same terms set forth in the Lead Bid, it provides for a Purchase Price that includes cash and/or other consideration that exceeds the aggregate cash consideration to be paid to or for the benefit of the Debtors' estates set forth in the Lead Bid by at least $430,000, which represents the sum of (A) the amount of the Break-Up Fee of $180,000, plus (B) the Expense Reimbursement (not to exceed $150,000), plus (C) $100,000 and otherwise has a value to the Debtors, in the Debtors' exercise of their reasonable business judgment, after consultation with their advisors, that is greater or otherwise better than the value offered under the APA including impact of the liabilities assumed in the APA;

h.    it identifies the Assets (or subset(s) thereof) that are included in the bid;

i.    it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to reject and provides details of the Qualified Bidder's proposal for the treatment of related cure costs;

j.    it provides information concerning the Qualified Bidder's ability to satisfy adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned;

k.    it includes an acknowledgement and representation that the Qualified Bidder:  (A) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Proposed Asset Purchase Agreement; and (D) is not

entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

l.    it includes evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposed Asset Purchase Agreement;

m.    it contains a detailed description of how the Qualified Bidder intends to treat the Debtors' current employees, independent contract couriers, or third-party service providers;

n.    it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court;

o.    it contains such other information reasonably requested by the Debtors and the prepetition secured lenders and proposed postpetition secured lender;

p.    it provides a good faith cash deposit to be held by the Debtors equal to at least 10% of the Qualified Bidders' Bid (the "Good Faith Deposit"). The Good Faith Deposit shall be made by wire transfer to a non-interest bearing account specified by the Debtors pursuant to the instructions to be provided by the Debtors. The Good Faith Deposit of any Qualified Bidder (except for the Successful Bidder(s) or Back-Up Bidder(s)) shall be returned to the Qualified Bidder, with any interests earned thereon, within five (5) Business days from the Sale closing. The Good Faith Deposit of the Successful Bidder shall be applied against the purchase price for the assets purchased by the Successful Bidder

q.    it contains a statement that the Qualified Bidder has not engaged in any collusion with respect to the bidding or Sale; and

r.    it is received on or prior to the Bid Deadline.

Notwithstanding anything in these Bidding Procedures to the contrary, and for the avoidance of doubt, for all purposes under these Bidding Procedures, Auction and Sale, the Lead Bid and the Lead Bidder shall be deemed a Qualified Bid and Qualified Bidder, respectively. The Lead Bidder shall not be required to take any further action in order to participate in the Auction (if any) or, if the Lead Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing (as defined below). Additionally, any bids submitted by a combination of Potential Bidders whose bids for the Assets (or any combination of subset(s) thereof) do not overlap and who agree to have their bids combined for the purposes of determination of whether such Potential Bidders (as combined) shall constitute a Qualified Bid, shall be deemed one Qualified Bid and the bidders as Qualified

Bidders, to the extent the bid (or combined bids) satisfies the provisions of the Bidding Procedures Order.

iv.     **Notification to Qualified Bidders**:  No later than one (1) business day following the expiration of the Bid Deadline, the Debtors shall notify the Lead Bidder, all other Qualified Bidders, and the Notice Parties in writing as to whether or not any bids (or combination of bids) constitute Qualified Bids (and, with respect to each Qualified Bidder that submitted a bid other than the Lead Bidder, whether such Qualified Bidder's bid constitutes a Qualified Bid).

v.     **Auction, Auction Procedures, and Overbids**:  If the Debtors receive one or more Qualified Bids in addition to the APA, the Debtors will conduct an auction (the "<u>Auction</u>") of the Assets, which shall be transcribed commencing at 10:00 a.m. (prevailing Eastern Time) two (2) business days after the Bid Deadline at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, or such other location as shall be timely communicated by the Debtors to the Notice Parties, any Qualified Bidders that have submitted Qualified Bids, and/or other party as the Debtors may determine to include in their reasonable discretion, in each case along with their representatives and advisors.  The Auction shall be conducted in accordance with the following procedures:

a.     Only the Notice Parties, any other Qualified Bidders that have submitted Qualified Bids, and/or other party as the Debtors may determine to include in their reasonable discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person); if a party that is a creditor of the Debtors, other than those listed above, would like to attend the Auction, such party shall make a request to attend the Auction in writing (which writing may be in the form of an electronic mail) and serve such request on the Notice Parties no later than 12:00 p.m. (prevailing Eastern Time) two (2) business days prior to the date of the Auction;

b.     only the Lead Bidder and such other Qualified Bidders that have submitted Qualified Bids on or prior to the Bid Deadline will be entitled to make any subsequent bids at the Auction; provided that all such Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

c.     each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

d.      at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (a) the date of the selection of either the Successful Bidder and/or Back-up Bidder at the conclusion of the Auction, or (b) if selected as either the Successful Bidder or Back-up Bidder, until the Outside Date (as defined below).  Prior to the start of the Auction, the Debtors will provide copies of the Qualified Bid which the Debtors believe, in their reasonable discretion, and following consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to the Lead Bidder and all other Qualified Bidders;

e.      all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

f.      the Debtors, after consultation with their advisors, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) provide that bids be made and received on an open basis, with all material terms of each bid to be fully disclosed to all other Qualified Bidders at the Auction and (iii) are disclosed to each Qualified Bidder at the Auction; and

g.      bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $100,000 above the prior bid.  After the first round of bidding and between each subsequent round of bidding, the Debtors, after consultation with the Consultation Parties, shall announce the bid (including the identity of that bidder and the value of such bid) that it believes to be the highest or otherwise best offer (the "Highest Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Highest Bid.  Each Qualified Bidder shall either elect to provide a higher bid or withdraw from the Auction.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Lead Bidder), the Debtors will give effect to the Break-Up Fee and Expense Reimbursement payable to the Lead Bidder under the APA as well as any additional liabilities to be

assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors. If the Lead Bidder bids at the Auction, the Lead Bidder will be entitled to a "credit" for the Break-Up Fee and Expense Reimbursement.  To the extent a Subsequent Bid has been accepted entirely or in part because of the addition, deletion or modification of a provision or provisions in the applicable Proposed Asset Purchase Agreement or the APA, the Debtors will identify such added, deleted or modified provision or provisions.

vi.     **Selection of Successful Bidder and Back-up Bidder.**  Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors and the Consultation Parties, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders (including the Lead Bidder) submitted at or prior to the Auction (such bid, the "Successful Bid" and the bidder or bidders making such bid, the "Successful Bidder(s)") and communicate to the Lead Bidder and the other Qualified Bidders the identity of the Successful Bidder(s) and the details of the Successful Bid.  The determination of the Successful Bid by the Debtors at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.  Upon determining the Successful Bidder(s), at the conclusion of the Auction, the Debtors shall also identify the next highest or otherwise best Qualified Bid (if any) (the "Back-Up Bid") and the Qualified Bidder(s) who submitted such bid (the "Back-Up Bidder(s)").  Within one (1) business day after adjournment of the Auction, the Debtors shall file a notice identifying the Successful Bidder(s) and Back-up Bidder(s) with the Bankruptcy Court**.**  Each Qualified Bidder shall be required to keep its bid open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days following entry of the Sale Order or (ii) the closing of the Sale with the Successful Bidder (the "Outside Date").  The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until the earlier of two (2) business days after (i) the closing of the Sale with the Successful Bidder or (ii) the Outside Date.

Within two (2) business days after adjournment of the Auction, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Debtors will sell the substantially all of their Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.  The Successful Bidder(s) shall be required to consummate the Sale by [___], subject to extensions by the Debtors, in their sole discretion.  If the Successful Bidder(s) fails to timely consummate the Sale of the Assets, or any subset(s) thereof, the Debtors shall consummate the Sale of the Assets,

or any subset(s) thereof, to the Back-up Bidders pursuant to the terms of the Back-up Bid as soon as commercially reasonable.

vii.  **Alteration of Procedures**:  The Debtors, after consultation with the Consultation Parties, may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the goals of these procedures, namely, to maximize value for the estates; provided that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Bidding Procedures Order, including permitting the submission of Qualified Bids after the close of the Auction and otherwise not conflict with these Bidding Procedures or the Bidding Procedures Order.  All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

## SALE NOTICE PROCEDURES

17.  Within two (2) business days after entry of the Bidding Procedures Order, the Debtors shall provide notice (substantially in the form of the notice attached to hereto as Exhibit D (the "Sale Notice")) of the Bidding Procedures Order, the Auction, the Objection Deadlines and the sale hearing (the "Sale Hearing") by first-class mail upon (i) the Office of the United States Trustee for the District of Delaware, (the "U.S. Trustee"), (ii) the Office of the United States Attorney for the District of Delaware (the "U.S. Attorney"), (iii) counsel to any statutory committee appointed in the Chapter 11 Cases, (iv) the Internal Revenue Service, (v) the Debtors' thirty (30) largest unsecured creditors or an counsel to any statutorily appointed committee, (vi) counsel to the Debtors' prepetition and postpetition secured lenders, (vii) counsel to the Lead Bidder, (viii) all persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Assets during the previous six months, (ix) all entities known by the Debtors that may have a lien, claim, encumbrance or other interest in the Assets (for which identifying information and addresses are available to the Debtors), (x) all non-Debtor counterparties to the Executory Contracts and Unexpired Leases, (xi) all of the Debtors' known creditors, (xii) any governmental unit known to the Debtors to have a claim in the Chapter 11

Cases, (xiii) the Office of the Attorney General in each state in which the Debtors operate, (xiv) the Office of the Delaware Secretary of State and (xv) all parties that have requested notice in the Chapter 11 Cases under Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties").

18.     The Debtors submit that the proposed Sale Notice, and providing notice of this Motion, the Auction and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and Local Rule 2002-1 and constitutes good and adequate notice of the Sale and the proceedings with respect thereto.  Therefore, the Debtors respectfully request that this Court approve the form of the Sale Notice and the notice procedures proposed above.

19.     Any and all objections, if any, to any Sale, including objections to the Auction and the selection of any Successful Bidder or Successful Bidders, must be filed no later than twenty-five (25) days after entry of the Bidding Procedures Order (the "Sale Objection Deadline") and be served on (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn:  Joseph M. Barry, Esq. (jbarry@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com) and Donald J. Bowman, Jr., Esq. (dbowman@ycst.com)), (ii) counsel to the Lead Bidder, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112 (Attn. Emanuel Grillo, Esq. (emanuel.grillo@bakerbotts.com), (iii) counsel to any statutory committee appointed in the Chapter 11 Cases and (iv) the U.S. Trustee (collectively, the "Objection Recipients").  All replies to such objections must be filed no later than two (2) days prior to the Sale Hearing.

20.     Any party failing to timely file an objection to any Sale shall be forever barred from objecting and shall be deemed to have consented to any Sale, including the transfer of the Debtors' right, title, and interest in, to and under the Debtors' Assets free and clear of any and

all liens, claims, encumbrances, and other interests in accordance with a definitive agreement for a

Sale.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

21.    The Debtors believe that their executory contracts represent valuable rights

necessary to the continued operation of their business.  To that end, the Debtors seek to establish

the following procedures permitting them to assume and assign these contracts to the Successful

Bidder and to notify counterparties to executory contracts and unexpired leases of potential cure

amounts:

    i.    **Cure Notice**: The Debtors shall, within two (2) business days after the entry of the Bidding Procedures Order, serve the Cure Notice, substantially in the form attached hereto as <u>Exhibit E</u>, upon each non-Debtor counterparty to each Executory Contract and Unexpired Lease and their counsel (if known). The Cure Notice shall state the date, time and place of the Sale Hearing, whether such Executory Contract or Unexpired Lease is designated to be assumed and assigned to the Lead Bidder, as well as the date by which any objection to the assumption and assignment of such Executory Contract or Unexpired Lease must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Executory Contract or Unexpired Lease in order to cure any defaults that exist under such contract or lease (the "<u>Cure Amounts</u>") pursuant to section 365 of the Bankruptcy Code.  The Cure Notice does not constitute an admission that an Executory Contract or Unexpired Lease is in fact an executory contract or unexpired lease, and the Debtors reserve any and all rights with respect to the Executory Contracts and Unexpired Leases.

    ii.    **Cure Objections**:  If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the Cure Amounts set forth in the Cure Notice, such counterparty must file with the Court a written objection (a "<u>Cure Amount Objection</u>") and serve such Cure Amount Objection so as to be received by the Notice Parties by no later than ten (10) days after service of the Cure Notice (the "<u>Cure Objection Deadline</u>," and, together with the Assignment Objection Deadline and the Sale Objection Deadline (each as defined herein), the "<u>Objection Deadlines</u>").  Each Cure Amount Objection must set forth with specificity each and every asserted default in any Executory Contract or Unexpired Lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice.

iii.    **Supplemental Contracts**:  Although the Debtors have made a good faith effort to identify all Executory Contracts and Unexpired Leases to be assumed and assigned in connection with the Sale, they may discover additional Executory Contracts and Unexpired Leases that the Debtors desire to assume and assign in connection therewith.  Accordingly, if at any time after the entry of the Bidding Procedures Order, the Debtors or any Qualified Bidder identify additional executory contracts or unexpired leases to be assumed and assigned as Assumed Contracts (whether before or after the closing of the Sale), as applicable, the Debtors shall serve a supplemental cure Notice (the "Supplemental Cure Notice") by facsimile, electronic transmission, hand delivery or overnight mail on the applicable non-debtor counterparty and its counsel (if known) no later than ten (10) days before the proposed effective date of the assignment.  Each Supplemental Cure Notice shall (i) state the date, time and place of the Sale Hearing, (ii) state the date by which any objection to the assumption and assignment of such Assumed Contract must be filed and served, and (iii) identify the Cure Amount.

iv.    **Supplemental Objections**:  Unless the non-debtor counterparty properly files and serves an objection to the Supplemental Cure Notice (the "Supplemental Cure Objection") on or before the earlier of ten (10) days of the date of the Supplemental Cure Notice (the "Supplemental Cure Objection Deadline"), the Debtors shall be authorized to assume and assign the Executory Contract or Unexpired Lease, subject to the occurrence of the Closing without further notice or order of the Court.

v.    **No Obligation to Assume**:  The inclusion of an Executory Contract or Unexpired Lease on the Cure Notice or Supplemental Cure shall not obligate the Successful Bidder to take assignment of such Executory Contract or Unexpired Lease.  Only those contracts that constitute Assumed Contracts pursuant to the APA or any Successful Bidder's Modified APA will be assumed, assigned and sold to the Successful Bidder.

vi.    **Disputed Cure Amounts**:  In the event that the Debtors and the non-debtor party cannot resolve the Cure Amount Objection or Supplemental Cure Objection, disputed Cure Amounts ("Disputed Cure Amounts") shall not be paid until the resolution of any such disputes by the Court or mutual agreement of the Debtors, the Successful Bidder and the objecting party.  Cure Amount Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely file and serve a Cure Amount Objection shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice.  If no timely Cure Objection is filed and served with respect to an Assumed Contract, the Cure Amount identified in the Cure Notice with respect to the Executory Contracts and Unexpired Lease will be the only amounts necessary under section 365(b) of the Bankruptcy

Code to cure all monetary defaults under such Executory Contracts and Unexpired Lease if the Lead Bidder (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract assumed and assigned to it.  Any party failing to timely file a Cure Amount Objection shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

vii.    **Assignment Objections**: If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the assumption and assignment of such Executory Contract or Unexpired Lease with respect to the Lead Bidder (other than a Cure Amount Objection, an "Assignment Objection"), such counterparty must file and serve such Assignment Objection so as to be received by the Notice Parties by no later than (i) ten (10) days after service of the Cure Notice; or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Contract if such contract is to be assumed and assigned after the Sale Hearing (the "Assignment Objection Deadline"); provided that, if the Successful Bidder is not the Lead Bidder the Assignment Objection Deadline shall be one (1) day prior to the Sale Hearing. The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

viii.    **Adequate Assurance**.  Any request for adequate assurance information regarding the Lead Bidder (a "Request for Adequate Assurance Regarding Lead Bidder") must be sent to (i) counsel for the Lead Bidder and (ii) counsel to the Debtors on or before the Cure Objection Deadline.  The Lead Bidder shall have five (5) business days after the Request for Adequate Assurance Regarding Lead Bidder (the "Adequate Assurance Response Deadline") to provide the requesting party with any and all non-confidential information reasonably related to Request for Adequate Assurance Regarding the Lead Bidder.  Any objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Sale Hearing and will be resolved at the Sale Hearing.

ix.    **Deemed Consent**:  If no objection is timely filed and served, the counterparty to an Executory Contract or Unexpired Lease shall be deemed to have consented to the assumption, assignment and sale of the Executory Contract or Unexpired Lease to any Successful Bidder if such Executory Contract or Unexpired Lease is elected by any Successful Bidder as an Assumed Contract and will be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by any Successful Bidder. The Cure Costs set forth in the Cure Notice and Supplemental Cure Notice shall be controlling, notwithstanding anything to the contrary in any Executory Contract or Unexpired Lease, or any other document, and the

counterparty to the Executory Contract or Unexpired Lease shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such Executory Contract or Unexpired Lease against the Debtors or the Successful Bidder, or the property of any of them.

## LEGAL BASIS FOR RELIEF REQUESTED

**A.      Approval of the Sale and Bidding Procedures is Warranted Under Section 363 of the Bankruptcy Code**

22.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 363 does not provide a standard establishing the appropriate circumstances for bankruptcy courts to authorize the sale of a debtor's assets.  This Court, however, has held that such a sale may be authorized under section 363 of the Bankruptcy Code if the Court finds a "sound business purpose" for the Sale.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147 (Bankr. D. Del. 1999) (citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)).  In Delaware, the business judgment rule creates a "presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest."  *Stanizale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 234 (3d Cir. 2005) (citations omitted); *see also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

23.      Once a court is satisfied that there is a sound business reason justifying the sale, the court must also determine that adequate and reasonable notice has been provided to interested parties, that the sale price is fair and reasonable, and that the purchaser is proceeding in

good faith. *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (citing *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 20 (Bankr. E.D. Pa. 1987)).

24.     A valid business justification exists to sell the Assets.  In the Debtors' judgment, a sale of the Assets in chapter 11 is the best path to maximizing value and recoveries for their estates, creditors, and other parties in interest.  The Debtors believe that the Sale must be completed in accordance with the timeframe proposed in this Motion to avoid a significant interruption in their business operations and thus impair the value of the assets.

25.     The Auction process and the time periods set forth in the Bidding Procedures are reasonable under the circumstances and provide parties with sufficient time and information necessary to formulate a bid to purchase the Assets.  The Bidding Procedures balance the need for adequate and appropriate notice to parties in interest and to potential purchasers with the need to sell the Assets while they have realizable value and can be maintained as a going concern.  The Debtors undertook an extensive marketing process prior to the Petition Date and will, in accordance with the Bidding Procedures, continue to give Potential Bidders the opportunity to perform diligence and submit bids.

26.     Completion of the Sale process in a timely manner will maximize the value of Assets.  The time periods set forth in the Bidding Procedures were negotiated by the Lead Bidder, and completing the Sale process in an expedited manner is the best means of maximizing the value of the Assets and the only means of maintaining the business as a going concern, which could enable the Debtors' employees to retain their jobs and will reduce claims against the Debtors estates.

27.     Moreover, as stated herein, the Debtors will provide notice of the Sale to all parties in interest as required by the Bankruptcy Rules and the Local Rules.  The Debtors believe that the proposed notice procedures are reasonable and adequate under the circumstances.

28.     At the Sale Hearing, the Debtors will provide evidence that the sale price for the Assets is fair and reasonable by showing that the Successful Bidder offered the highest or best purchase offer for the Assets.  The Bidding Procedures and the APA are designed to encourage as many bidders as possible to put forth their best offers, thus increasing the likelihood that the Assets will be sold for the highest or best purchase price possible.  In addition, the Debtors will present evidence at the Sale Hearing that the Sale was a fairly negotiated, arm's length transaction in which the Successful Bidder acted in good faith, and, therefore, that the protections of section 363(m) of the Bankruptcy Code should apply.

29.     Accordingly, the Debtors request that the Court approve the proposed Sale set forth herein.

**B.     Granting the Debtors Authority to Enter into a APA is Appropriate**

30.     In connection with the Sale, the Debtors are seeking authorization to pay the Bid Protections (if necessary) to the Lead Bidder in accordance with the APA.

31.     Approval of bid protections like the Break-Up Fee and Expense Reimbursement in connection with sales pursuant to section 363 of the Bankruptcy Code has become an established practice in chapter 11 cases.  Although bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern in the bankruptcy context.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999).  Accordingly, bidding incentives must provide some postpetition benefit to a debtor's estate to be approved.  *Id.*

32.     The Third Circuit has recognized the benefits and potential necessity of bidding protections.  First, such protections may be necessary to preserve the value of the estate if they "promote[] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *In re O'Brien*,  181 F.3d at 537.  Second, if a bid protection induces a bidder to research the value of the debtor and convert the value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth.  *In re Reliant Energy*, 594 F.3d 200, 206-07 (3d Cir. 2010).

33.     In *In re O'Brien*, the court reviewed nine factors set forth by the lower court as relevant in deciding whether to award a breakup fee:

    i.     the presence of self-dealing or manipulation in negotiating the breakup fee;

    ii.    whether the fee harms, rather than encourages, bidding;

    iii.   the reasonableness of the breakup fee relative to the purchase price;

    iv.   whether the unsuccessful bidder placed the estate property in a "sales configuration mode" to attract other bidders to the auction;

    v.    the ability of the request for a breakup fee to serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;

    vi.   the correlation of the fee to a maximum of value of the debtor's estate;

    vii.  the support of the principal secured creditors and creditors' committees of the breakup fee;

    viii.  the benefits of the safeguards to the debtor's estate; and

    ix.   the substantial adverse impact of the breakup fee on unsecured creditors, where such creditors oppose the breakup fee.

See *In re O'Brien*, 181 F.3d at 536.

34.     The Bid Protections provide the type of benefits to the Debtors' estates identified by the Third Circuit in *O'Brien* and do not implicate any of the negative factors

discussed therein.  The Bid Protections were negotiated in good faith and are fair and reasonable in

amount, particularly in light of the due diligence the Lead Bidder must perform on the value of the

Assets, the time and expense the Lead Bidder has invested in negotiating the APA with the

Debtors, and the lack of other offers for the Assets at the price offered by the Lead Bidder.  The

Bid Protections also enable the Debtors to set an adequate floor for an Auction and ensure that any

competing bid will be higher and otherwise better than the APA.  In this manner, providing the Bid

Protections to the Lead Bidder facilitates competition in the Bidding Process and assists the

Debtors in maximizing the value of their estates.  Accordingly, the Debtors request authorization

to offer the Bid Protections to the Lead Bidder pursuant to the terms of the Bidding Procedures

Order.  Finally, authorization to pay the Bid Protections will not diminish the value of the Debtors'

estates, as the Debtors intend to consummate the transactions contemplated by the APA unless

they receive a higher and otherwise better bid.

### C.    The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for a Free and Clear Sale

35.    In the interest of attracting the best offers, the Debtors request authorization

to sell the Assets free and clear of any and all liens, claims, encumbrances and other interests in

accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances

and other interests attaching to the proceeds of the sale of the Assets and distributed as provided

for in a further order of the Court.

36.    Under section 363(f) of the Bankruptcy Code, a debtor may sell estate

property free and clear of liens, claims, encumbrances, and other interests if one of the following

conditions is satisfied:

(i)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(ii)    such entity consents;

(iii)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv)    such interest is in bona fide dispute; or

(v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is written in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens, claims, encumbrances, and other interests.  *See, e.g., In re Dura Automotive Sys., Inc.*, 2007 WL 7728109 n.32 (Bankr. D. Del. Aug. 15, 2007).

37.    Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

38.    The Debtors will present evidence at the Sale Hearing that the Sale satisfies the requirements of section 363(f).  Accordingly, the Debtors request authorization to sell the Assets free and clear of all liens, claims, encumbrances, and other interests (including any claims premised on a theory of successor liability).

**D.    The Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

39.    Pursuant to Bankruptcy Code section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *Mark Bell Furniture Warehouse, Inc. v. D. M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.)*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d

1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986).

40.    The APA has been negotiated at arm's-length by sophisticated parties, each represented by their own advisors, and any Modified APA will be negotiated at arm's-length by sophisticated parties, each represented by their own advisors.  Accordingly, the Debtors request that the Sale Order include a provision that any Successful Bidder is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Debtors believe that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Assets and closing of the same will occur promptly.

**E.    Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases Should be Authorized**

41.    Under section 365(a) of the Bankruptcy Code, a debtor in possession may, subject to the court's approval, assume or reject any executory contract or unexpired lease of a debtor.  11 U.S.C. § 365(a).  The standard governing the court's approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's business judgment supports assumption or rejection.  *See, e.g., In re Stable Mews Assocs.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).  In this context, the business judgment test "requires only that the trustee [or debtor-in-possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assocs.*, 41 B.R. at 596).  Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.  *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).  Moreover, pursuant to section 365(b) of

the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide

adequate assurance that the debtor will promptly cure," any default, including compensation for

"actual pecuniary loss" relating to such default.  11 U.S.C. 365(b)(1).

       42.     Once an executory contract is assumed, the debtor may elect to assign such

contract.  *See In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code

generally favors free assignability as a means to maximize the value of the debtor's estate."); *see

also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of

section 365(f) is to assist the trustee in realizing the full value of the debtor's assets).  Section

365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only

if the trustee assumes such contract . . . and adequate assurance of future performance is provided."

11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on

the facts and circumstances of each case, but should be given a "practical, pragmatic construction."

*In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *see also In re Decora Indus.*, 2002 U.S.

Dist. LEXIS 27031, at *23 (D. Del. 2002) ("[A]dequate assurance falls short of an absolute

guarantee of payment.").  Adequate assurance may be provided by demonstrating the assignee's

financial health and experience in managing the type of enterprise or property assigned.  *See, e.g.,

In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that adequate assurance

is present when prospective assignee of lease from debtor has financial resources and has

expressed willingness to devote sufficient funding to business to give it strong likelihood of

success).

       43.     To facilitate and effectuate the Sale, the Debtors request approval under

section 365 of the Bankruptcy Code of the Debtors' assumption, assignment, and sale of the

Executory Contracts and Unexpired Leases to the Successful Bidder.  The Debtors further request

that the Sale Order provide that the Executory Contracts and Unexpired Leases be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder, notwithstanding any provisions in the Executory Contracts and Unexpired Leases, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (3) that prohibit such assignment.

44.     The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent).  Any and all Successful Bidders are responsible for providing evidence of adequate assurance of future performance to the extent required in connection with the assumption and assignment of any Executory Contracts and Unexpired Leases. Any objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Sale Hearing and will be resolved at the Sale Hearing.

45.     The counterparties to the Executory Contracts and Unexpired Leases will have sufficient opportunity to file an objection to the proposed Cure Costs.  To the extent no objection is filed with regard to particular Cure Costs, such Cure Costs shall be binding on the applicable contract or lease counterparty.  The payment of the Cure Costs will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine that a particular contract is not truly executory and does not need to be cured to transfer the Assets to the Successful Bidder.

46.     Cure Costs disputed by any counterparties, with respect to any Executory Contracts and Unexpired Leases to be assumed and assigned to the Successful Bidder at the Closing (as defined in the Bidding Procedures), will be resolved by the Court at the Sale Hearing.

47.     Accordingly, the Debtors request authority to assume, assign, and sell executory contracts and unexpired leases under section 365 of the Bankruptcy Code.

**F.     Relief from Bankruptcy Rules 6004(h) and 6006(d) is Appropriate**

48.     Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order.  Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for fourteen days, unless the court orders otherwise.

49.     To preserve the value of the Debtors' estates and limit the costs of administering and preserving the Assets, it is critical that the Debtors close the sale of the Assets as soon as possible after all closing conditions have been met or waived.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

50.     Notice of this Motion shall be given to (i) the U.S. Trustee, (ii) the U.S. Attorney, (iii) the Internal Revenue Service, (iv) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (v) counsel to any statutory committee appointed in the Chapter 11 Cases, (vi) counsel to the Debtors' pre- and proposed post-petition secured lenders, (vii)

counsel to the Lead Bidder, and (viii) any party that has filed a notice of appearance and request

for service of papers as of the date hereof.  The Debtors respectfully submit that no further notice

of this Motion is required.

## **NO PREVIOUS REQUEST**

51.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  February 18, 2019
        Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                      /s/  *Donald J. Bowman, Jr.*
                                      Joseph M. Barry (No. 4221)
                                      Matthew B. Lunn (No. 4119)
                                      Donald J. Bowman, Jr. (No. 4383)
                                      Jordan E. Sazant (no. 6515)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone: (302) 571-6600
                                      Facsimile: (302) 571-1253

                                      *Proposed Co-Counsel to the Debtors and
                                      Debtors in Possession*