## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BEAVEX HOLDING CORPORATION, *et al.*,[1] | Case No. 19-10316 (LSS) |
| Debtors. | Jointly Administered |
| | **Ref. Docket Nos.:  16, 151** |

**ORDER: (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING THE DEBTORS' PERFORMANCE UNDER THE ASSET PURCHASE AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (the "Debtors") for the entry of an order pursuant to sections 105(a), 363

and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006,

9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), among other things,

authorizing the sale (the "Sale") of certain of the Debtors' assets (the "Assets") free and clear of

liens, claims, encumbrances, and other interests, except as provided by that Asset Purchase

Agreement by and between TForce Final Mile, LLC, TForce Final Mile West, LLC and TForce

Logistics, LLC (collectively, the "Purchaser" or "Lead Bidder") and Debtors (as may be

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  BeavEx Holding Corporation (7740); BeavEx Acquisition, Inc. (5497); BeavEx Incorporated (7355); JNJW Enterprises, Inc. (4963); and USXP, LLC (2997).  The headquarters for the above-captioned Debtors is located at 2120 Powers Ferry Road SE, Suite 300, Atlanta, GA 30339.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in either the Motion or the APA (as defined herein), as applicable.

01:23675674.12

amended, supplemented or otherwise modified, together with all exhibits and annexes thereto,

the "APA"),[3] [Docket No. 16]; (b) authorizing the Debtors' performance under the APA, (c)

approving the assumption and assignment of certain of the Debtors' Executory Contracts and

Unexpired Leases related thereto (any such Executory Contract or Unexpired Lease designated

to be assumed and assigned pursuant to the Sale) and (d) granting related relief; the Court having

entered an order approving the Bidding Procedures and granting certain related relief on March

14, 2019 [Docket No. 151] (the "Bidding Procedures Order"); and no auction (the "Auction")

having been held because no additional Qualified Bids (as defined in the Bidding Procedures

Order) on the Acquired Assets were received by the Debtors other than the APA; and the

Purchaser having been deemed the Successful Bidder (as defined in the Bidding Procedures) by

the Debtors pursuant to the Bidding Procedures Order; and the Debtors having filed a notice on

April 11, 2019 [Docket No. 220] of the cancellation of the Auction and intent to seek approval of

the Successful Bidder and of approval of the Sale; and the Court having conducted a hearing on

the Motion on April 16, 2019 (the "Sale Hearing") at which time all interested parties were

offered an opportunity to be heard with respect to the Motion; and the Court having reviewed

and considered the Motion, the *Declaration of Bradley E. Scher in Support of Entry of (I) Order*

*(A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens,*

*Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors'*

*Performance Under the Asset Purchase Agreement, (C) Approving the Assumption and*

*Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related*

*Thereto and (D) Granting Related Relief and (II) Order: (A) Authorizing the Sale of Certain*

*Accounts Receivable of the Debtors Free and Clear of Liens, Claims, Encumbrances, and Other*

---

[3] A copy of the APA is attached hereto as Exhibit 1.

*Interests and (B) Granting Related Relief* [Docket No. 227] (the "Scher Declaration"), and the

*Declaration of Ben Wright in Support of Entry of (I) Order (A) Authorizing the Sale of*

*Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and*

*Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset*

*Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors'*

*Executory Contracts and Unexpired Leases Related Thereto and (D) Granting Related Relief*

*and (II) Order: (A) Authorizing the Sale of Certain Accounts Receivable of the Debtors Free and*

*Clear of Liens, Claims, Encumbrances, and Other Interests and (B) Granting Related Relief*

[Docket No. 228] (the "Wright Declaration"), and other evidence submitted in support thereof of

the APA; the Bidding Procedures Order, and the record of the Bidding Procedures Hearing, and

Sale Hearing; and the Court having been advised that the Official Committee of Unsecured

Creditors (the "Committee") and each of its members supports approval of the Sale and entry of

this Sale Order (as defined below); and having heard statements of counsel and the evidence

presented in support of the relief requested in the Motion at the Sale Hearing; and due notice of

the Motion, the APA, the Bidding Procedures Hearing, Bidding Procedures Order and the

cancellation of the Auction having been provided; and having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and

all other parties in interest; and the Court having jurisdiction over this matter; and the legal and

factual bases set forth in the Motion and at the Sale Hearing establishing just cause for the relief

granted herein; and after due deliberation thereon,

**THE COURT HEREBY FURTHER FINDS AND DETERMINES THAT:**

**I.      Jurisdiction, Final Order and Statutory Predicates**

A.      The Court has jurisdiction to hear and determine the Motion pursuant to

28 U.S.C. §§ 157(b)(1) and 1334(a) and the Amended Standing Order.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

        B.      This order (this "Sale Order") constitutes a final and appealable order

within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and

6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal

Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly

finds that there is no just reason for delay in the implementation of this Sale Order, and expressly

directs entry of judgment as set forth herein.

        C.      The statutory predicates for the relief requested in the Motion are sections

105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2),

6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

        D.      The findings of fact and conclusions of law set forth herein constitute the

Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014.

        E.      To the extent any of the following findings of fact constitute conclusions

of law, they are hereby adopted as such.  To the extent any of the following conclusions of law

constitute findings of fact, they are hereby adopted as such.  Any findings of fact or conclusions

of law stated by the Court on the record at the Sale Hearing are incorporated herein.

**II.**      **Notice of the Sale, Auction and the Cure Amounts**

        A.      Actual written notice of the Bidding Procedures Hearing, Sale Hearing,

Auction, the Motion, the Sale, the assumption, assignment and sale of the Executory Contracts

and Unexpired Leases to be assigned to the Purchaser pursuant to the APA (which are identified

on Exhibit 2 hereto; such executory contracts and such unexpired leases (the "Assumed

Contracts")) provided a fair and  reasonable opportunity to object or be heard with respect to the

Motion and the relief requested therein has been afforded to all known interested persons and entities, including, but not limited to the following parties:  (i) the Office of the United States Trustee for Region III, (ii) the Office of the United States Attorney for the District of Delaware, (iii) counsel to the Committee, (iv) the Internal Revenue Service, (v) counsel to the prepetition secured lenders and proposed postpetition secured lenders, (vi) counsel to the Lead Bidder, (vii) all persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Assets during the previous six months, (viii) all entities known by the Debtors that may have a lien, claim, encumbrance or other interest in the Assets (for which identifying information and addresses are available to the Debtors), (ix) all non-Debtor counterparties to the Executory Contracts and Unexpired Leases, (x) all of the Debtors' known creditors, (xi) any governmental unit known to the Debtors to have a claim in these Chapter 11 Cases, (xii) the Office of the Attorney General in each state in which the Debtors operate, (xiii) the Office of the Delaware Secretary of State and (xiv) all parties that have requested notice in the Chapter 11 Cases under Bankruptcy Rule 2002.

B.    In accordance with the provisions of the Bidding Procedures Order, the Debtors caused the Cure Notice (as defined in the Bidding Procedures Order) to be served, in compliance with the requirements of due process and the Bankruptcy Code, upon the Purchaser and the non-Debtor counterparties to the Executory Contracts or Unexpired Leases (the "Contract Counterparties"), identifying such parties: (i) that the Debtors seek to assume and assign the Assumed Contracts on the Closing Date; and (ii) of the relevant Cure Amounts. Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the Assumed Contracts.  The Purchaser and the

Contract Counterparties have had an opportunity to object to the cure amounts set forth in the Cure Notice.

C.      The Debtors' Sale Notice (as defined in the Bidding Procedures Order) provided all interested parties with timely and proper notice of the Sale, the Sale Hearing and the Auction.

D.      The Cure Notice provided the Purchaser and the Contract Counterparties with proper notice of the potential assumption and assignment of the Assumed Contracts and any Cure Amount relating thereto, and the procedures set forth in the Bidding Procedures Order with regard to objecting to any such Cure Amount satisfy the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

E.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Bidding Procedures, Auction, cancellation of Auction, Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Debtors also have complied with all obligations to provide notice of the Auction, cancellation of Auction, Sale Hearing, and Sale required by the Bidding Procedures Order.  The notices described in this Section II were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Auction, cancellation of the Auction, Sale Hearing, Sale, or assumption, assignment and sale of the Assumed Contracts is required.

F.      The disclosures made by the Debtors concerning the Motion, Bidding Procedures, APA, cancellation of the Auction, Sale, and Sale Hearing, including but not limited to disclosures contained in the Scher  Declaration and the Wright Declaration were good, complete and adequate.

III.    **Good Faith of the Purchaser**

A.    The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

B.    The Purchaser is purchasing the Acquired Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision.

IV.    **Highest and Best Offer**

A.    As described in the Wright Declaration, prior to selecting the Purchaser as the Lead Bidder, the Debtors engaged in an extensive and wide ranging marketing and sale efforts, resulting in a highly competitive bidding process prior to filing the Chapter 11 Cases.  In addition to such solicitations, the Debtors also implemented the Bidding Procedures and provided cancellation of the Auction in accordance with the provisions of the Bidding Procedures Order, and the Debtors have otherwise complied with the Bidding Procedures Order in all respects.  The Bidding Procedures which were conducted pursuant to the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  Such process was duly noticed and conducted in a noncollusive, fair and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

B.    The consideration provided by the Purchaser under the APA, including the assumption of the Assumed Liabilities constitutes the highest and best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estate than would be provided by any other available alternative.  The Debtors' determination that the APA constitutes the highest and

best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties.

C.    The APA represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Purchaser.

D.    Approval of the Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

E.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

**V.    No Fraudulent Transfer; Successor Liability Matters**

A.    The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under either the Bankruptcy Code or the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).  The consideration provided by the Purchaser pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

B.    By virtue of the consummation of the Sale, (i) the Purchaser is not a continuation of the Debtors or their respective estates, there is no continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser,

there is no continuity of enterprise between the Debtors and the Purchaser, and the Purchaser is not a mere continuation of the Debtors or their estates, (ii) the Purchaser is not holding itself out to the public as a continuation of the Debtors or their respective estates and (iii) the Sale does not amount to a consolidation, merger or de facto consolidation or merger of the Purchaser and the Debtors and/or the Debtors' estates.  Accordingly, the Purchaser is not and shall not be deemed a successor to the Debtors as a result of the consummation of the Sale contemplated by the APA.

## VI.     Validity of Transfer

A.     The Debtors and the Purchaser have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors or the Purchaser to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

B.     The transfer of each of the Acquired Assets to the Purchaser will be as of the Closing Date and shall be a legal, valid, and effective transfer of such assets that shall vest the Purchaser with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all charges, liens, interests, security interests, claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, options, rights of use or possession, rights of first offer or first refusal, easements, servitudes, restrictive covenants, encroachments, encumbrances, transfer restrictions or other similar restrictions of any kind (collectively, "Adverse Interests"), except for any Permitted Encumbrances and Assumed Liabilities.

## VII.     Section 363(f) Is Satisfied

A.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale of the Acquired Assets to the Purchaser and the assumption, assignment and sale of the Assumed Contracts to the Purchaser were not, except as otherwise provided in the APA with respect to the Permitted Encumbrances

and Assumed Liabilities, free and clear of all Adverse Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the APA and with respect to the Permitted Encumbrances and Assumed Liabilities), be liable for any of such Adverse Interests, including, but not limited to, Adverse Interests in respect of the following:  (i) all mortgages, deeds of trust and security interests; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; and (iii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (iv) any bulk sales or similar law; (v) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (vi) any Environmental Law(s); and (vii) any theories of successor or transferee liability.

        B.      The Debtors may sell the Acquired Assets free and clear of all Adverse Interests against the Debtors, their estates or any of the Acquired Assets (except for any Assumed Liabilities and Permitted Encumbrances under the APA) because, in each case, one or

more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Adverse Interests against or in the Debtors, their estates or any of the Acquired Assets who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Adverse Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Adverse Interests, if any, in each instance against the Debtors, their estates or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor or interest holder had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**VIII.    Assumption and Assignment of the Assumed Contracts**

A.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors and their estates, creditors, interest holders and other parties in interest and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.    The amounts set forth on Exhibit 2 annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts (the "Cure Amounts").

C.    Pursuant to the terms of the APA, the Purchaser and/or the Debtors have: (i) cured and/or provided adequate assurance of cure of any defaults existing prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any

party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  After the payment of the relevant Cure Amounts by the Purchaser and as required by the APA, the Debtors shall not have any further liabilities to the Contract Counterparties on or after the Closing Date.  The Purchaser provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.  Any non-Debtor counterparty to an Assumed Contract who did not timely file an objection to the assumption of its Assumed Contract shall be deemed to have consented to its assumption and assignment to the Purchaser pursuant to section 365 of the Bankruptcy Code.

D.    No default exists in the Debtors' performance under the Assumed Contracts as of the Closing Date other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

## IX.    Compelling Circumstances for an Immediate Sale

A.    To maximize the value of the Debtors' assets, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the APA.  The consummation of the Sale is necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors, interest holders and all other parties in interest in the Chapter 11 Cases and to provide the means for the Debtors to maximize creditor and interest holder recoveries.

B.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.      The relief requested in the Motion is granted and the Sale contemplated thereby, including the APA is approved, to the extent set forth herein.

2.      [Reserved].

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for by this Sale Order.

**Approval of the APA**

4.      The APA is hereby approved as set forth herein.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA and this Sale Order, (ii) close the Sale as contemplated in the APA and this Sale Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including the Escrow Agreement and any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

6.      This Sale Order shall be binding in all respects upon the Debtors, including the Debtors' estates, all holders of equity interests in any Debtor, all holders of any Claim(s)

(whether known or unknown) against any Debtor, any holders of Adverse Interests against or on all or any portion of the Acquired Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, the Acquired Assets and any trustees, if any, subsequently appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and their respective successors and assigns.

7.      The Purchaser shall perform any and all obligations under the APA and deliver all consideration contemplated under same.

**Transfer of the Acquired Assets**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets on the Closing Date.  Such Acquired Assets shall be transferred to the Purchaser upon and as of the Closing Date, and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and shall be free and clear of all Adverse Interests, except Assumed Liabilities and Permitted Encumbrances under the APA.  Upon the Closing, the Purchaser shall take title to and possession of the Acquired Assets subject only to the Assumed Liabilities and Permitted Encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Acquired Assets and the Assumed Contracts shall be free and clear of all Adverse Interests except for Assumed Liabilities and Permitted Encumbrances, all including, without limitation, any and all claims pursuant to any successor or successor-in-interest liability theory.  Adverse Interests shall attach solely to the net cash proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

9.       Except as expressly provided by the APA with respect to Assumed Liabilities and Permitted Encumbrances, all persons and entities holding Adverse Interests in all or any portion of the Acquired Assets arising under or out of, in connection with or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Acquired Assets, such persons' or entities' Adverse Interests in and to the Acquired Assets.  On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be deemed by the Purchaser to be necessary or desirable to release liens or claims on the Acquired Assets, if any, as provided for herein, as such liens or claim may have been recorded or may otherwise exist.

10.       All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser or its assignee as of the Closing Date.

11.       A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Adverse Interests and other encumbrances of record.

12.       If any person or entity that has filed statements or other documents or agreements evidencing Adverse Interests in all or any portion of the Acquired Assets and has not delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Adverse Interests (other than Assumed Liabilities or Permitted Encumbrances),

which the person or entity has or may assert with respect to all or any portion of the Acquired

Assets, then the Purchaser and the Debtors are hereby authorized to execute and file such

statements, instruments, releases and other documents on behalf of such person or entity with

respect to the Acquired Assets.

13.    This Sale Order is and shall be binding upon and govern the acts of all persons

and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any lease; and each of

the foregoing persons and entities is hereby authorized to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the APA.

**Payment of DIP Facility Obligations; Continuing Lien on Proceeds**

14.    Notwithstanding anything to the contrary herein, on the Closing Date the Debtors

shall pay the DIP Lender from the net proceeds of the Sale, including Cash or other

consideration, an amount sufficient to pay and satisfy in full and in immediately available funds,

without deduction or setoff, any and all DIP Facility Obligations (as defined in the Final DIP

Order, [Docket No. 143]) and all other amounts due the DIP Lender under the DIP Note (as

defined in the Final DIP Order) in accordance with the terms of the Final DIP Order, which

payment shall be indefeasible once made, and not subject to recovery, diminution, reduction or

reversal on any basis.  Subject to the provisions of paragraph 22 hereof, after indefeasible

payment in full in cash and other consideration of the DIP Facility Obligations, (i) on the Closing

Date, subject to retaining amounts set forth in the DIP Budget as agreed to by the DIP Lender

and Prepetition Secured Parties (each as defined in the Final DIP Order), and (ii) on the date after

the Closing Date that funds are released from any escrow established in connection with the sale,

in each case (i) and (ii) above), the Debtors shall pay directly to the Prepetition Secured Parties

from the remaining net proceeds of the Sale and available Cash Collateral any and all cash in

immediately available funds and other consideration, without deduction or setoff, to satisfy

obligations due the Prepetition Secured Parties under the Prepetition Financing Documents,

which payment shall be indefeasible once made, and not subject to recovery, diminution,

reduction or reversal on any basis.  Notwithstanding anything to the contrary contained in this

Sale Order or otherwise, the liens and claims of the Prepetition Secured Parties and DIP Lender

pursuant to the Final DIP Order and DIP Note shall attach to the remaining net cash proceeds of

the Sale with the same priority, validity, extent, force and effect as they now have in the

Acquired Assets to secure the obligations owed the Prepetition Secured Parties or the DIP

Lender that arose before the Closing Date, as well as such obligations owed to the DIP Lender, if

any, that arise on or after the Closing Date.

**<u>Assumed Contracts</u>**

15.     Upon the Closing of the Sale, the Debtors are authorized to assume and assign the

Assumed Contracts to the Purchaser free and clear of all Adverse Interests, subject to the terms

of this Sale Order.  The payment of the applicable Cure Amounts (if any) by the Purchaser as

required by the APA shall (a) effect a cure of all defaults existing thereunder as of the Closing

Date, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such

default, and (c) together with the assignment by the Debtors to and the assumption of the

Assumed Contracts by the Purchaser, constitute adequate assurance of future performance

thereof.  The Debtors shall then have assumed the Assumed Contracts and shall have assigned

the Assumed Contracts to the Purchaser.  Pursuant to section 365(f) of the Bankruptcy Code, the

assignment by the Debtors of the Assumed Contracts shall not be a default thereunder.  After the

payment of the relevant Cure Amounts by the Purchaser or Debtors, as applicable and as

required by the APA, the Debtors shall not have any further liabilities to the Contract

Counterparties, and the counterparties shall be estopped from asserting any and all claims,

whether known or unknown, against the Debtors on account of the Assumed Contract.

16.     Solely with respect to the Sale to the Purchaser as authorized hereby, any

provisions in any Assumed Contract that prohibits or conditions the assignment of such Assumed

Contract to the Purchaser or allows the party to such Assumed Contract to terminate, recapture,

impose any penalty, condition on renewal or extension or modify any term or condition upon the

assignment of such Assumed Contract to the Purchaser, constitute unenforceable anti-assignment

provisions that are void and of no force and effect.  All other requirements and conditions under

sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment

to the Purchaser of the Assumed Contracts have been satisfied.  Upon the Closing, in accordance

with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably

vested with all right, title and interest of the Debtors under the Assumed Contracts.

17.     Any Contract Counterparty who did not timely file an objection to the assumption

of its Assumed Contract shall be deemed to have consented to its assumption and assignment to

the Purchaser pursuant to section 365 of the Bankruptcy Code.

18.     Upon the Closing and the payment of the relevant Cure Amounts, if any, the

Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed

Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

19.    Upon the payment of the applicable Cure Amount, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts as of the assumption and assignment of the Assumed Contract.

20.    There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

21.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against either the Debtors or the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

**Other Provisions**

22.    Subject to the provisions of the Final DIP Order and upon (a) approval of the settlement among the Debtors, the DIP Lender, the Prepetition Secured Parties and the Committee read into the record at the Sale Hearing (Court approval of which will be sought at the May 15, 2019 hearing in these cases), and (b) the Closing of (i) the Sale, (ii) the Debtors' sale of accounts receivable constituting Excluded Assets under the APA to Tiger Capital Group, LLC that is subject to a separate order, or (iii) the closing of any other sale of assets constituting the collateral of the DIP Lender or the Prepetition Secured Parties, (I) all cash then held by the Debtors in excess of (i) amounts necessary to fund a wind-down budget to be prepared by the Debtors, in consultation with the Committee, the DIP Lender and the Prepetition Secured Parties and subject to agreement by the DIP Lender and the Prepetition Secured Parties (the "Wind-

Down Budget"); and (ii) $500,000 (the "Settlement Amount") shall be remitted to the DIP

Lender or the Prepetition Secured Parties, as applicable, in accordance with paragraph 14 of this

Order, and (II) if and to the extent the Debtors' cases are converted to a case under chapter 7 of

the Bankruptcy Code, any cash held by the Debtors in excess of the Settlement Amount and that

remain unspent under the wind-down budget (other than the Carve-Out amounts) shall be

remitted to the DIP Lender or the Prepetition Secured Parties, as applicable, in accordance with

the provisions of this Order, including paragraphs 13 and 14 of this Order, prior to such

conversion.

23.     The Debtors, in accordance with the provisions of the Bidding Procedures and

Bidding Procedures Order, determine that the Purchaser was the Successful Bidder(s) and filed

notice of same with this Court [Docket No. 220].  The Purchaser shall be required to

consummate the Sale by April 29, 2019, subject to extensions by the Debtors, in their sole

discretion, in consultation with the Consultation Parties.

24.     Effective upon the Closing Date except as set forth in the APA with respect to

Permitted Encumbrances and Assumed Liabilities, all persons and entities are forever prohibited

and permanently enjoined from commencing or continuing in any manner any action or other

proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding

against the Purchaser, its successors and assigns or the Acquired Assets, with respect to any

(i) Adverse Interests arising under, out of, in connection with or in any way relating to the

Debtors, the Purchaser, the Acquired Assets, or the operation of the Acquired Assets prior to the

Closing of the Sale or (ii) successor liability, including, without limitation, the following actions:

(a) commencing or continuing in any manner any action or other proceeding against the

Purchaser, its successors or assigns, assets or properties, (b) enforcing, attaching, collecting or

recovering in any manner any judgment, award, decree or order against the Purchaser, its

successors or assigns, assets or properties, (c) creating, perfecting or enforcing any Adverse

Interests against the Purchaser, its successors or assigns, assets or properties, (d) asserting any

setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser

or its successors or assigns, (e) commencing or continuing any action, in any manner or place,

that does not comply or is inconsistent with the provisions of this Sale Order or other orders of

the Court, or the agreements or actions contemplated or taken in respect thereof or (f) revoking,

terminating or failing or refusing to renew any license, permit or authorization to operate any of

the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

     25.     Except for the Assumed Liabilities, Permitted Encumbrances or as otherwise

expressly set forth in the APA, the Purchaser shall not have any liability or other obligation of

the Debtors arising under or related to any of the Acquired Assets or the APA or the transactions

related thereto.  Without limiting the generality of the foregoing, and except for the Assumed

Liabilities or Permitted Encumbrances provided in the APA, the Purchaser shall not be liable for

any Claims or any other Adverse Interests against the Debtors or any of its predecessors or

affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or

character, including, but not limited to, any theory of antitrust, environmental, successor or

transferee liability, labor law, *de facto* merger or substantial continuity, whether known or

unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent,

with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date,

including, but not limited to, liabilities on account of any taxes arising, accruing or payable

under, out of, in connection with, or in any way relating to the operation of any of the Acquired

Assets prior to the Closing.

26.     The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

27.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

28.     The failure specifically to include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

29.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

30.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Sale Order shall be immediately effective and enforceable.

31.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto

and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party and adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

01:23675674.12

**Dated: April 17th, 2019**
**Wilmington, Delaware**

23

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**