## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BEAVEX HOLDING CORPORATION, *et al.*,[1] | Case No. 19-10316 (LSS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: July 17, 2019, at 2:00 p.m. ET**<br>**Objection Deadline: June 26, 2019, at 4:00 p.m. ET** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (this "Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and solicitation of acceptances thereof. In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: BeavEx Holding Corporation (7740); BeavEx Acquisition, Inc. (5497); BeavEx Incorporated (7355); JNJW Enterprises, Inc. (4963); and USXP, LLC (2997). The headquarters for the above-captioned Debtors is located at 2120 Powers Ferry Road SE, Suite 300, Atlanta, GA 30339.

extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

3.    On February 18, 2019, each of the Debtors commenced a voluntary case under the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On March 1, 2019, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 Cases.  No request has been made for the appointment of a trustee or examiner.

4.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Donald Van der Wiel in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 2] (the "First Day Declaration").

## RELEVANT BACKGROUND

5.    On February 14, 2019, the Debtors entered into that certain asset purchase agreement by and between TForce Final Mile, LLC, TForce Final Mile West, LLC and TForce Logistics, LLC (collectively, "TFI" or the "Lead Bidder"), as buyer, and BeavEx Inc., JNJW

Enterprises, Inc., and USXP, LLC, as sellers, dated February 14, 2019 (the "Lead Agreement" or

"APA") for the sale of substantially all of their assets.  The Lead Agreement, among other

things, provided for a cash purchase price of approximately $7.2 million, plus the assumption of

certain liabilities.

6.     On the Petition Date, the Debtors filed a motion [Docket No. 13] (the "Sale

Motion") for entry of orders, among other things, (i) approving certain bidding and auction

procedures (the "Bidding Procedures") for the sale of all or substantially all of the Debtors'

assets (or any combination of subset(s) thereof) and (ii) authorizing the sale of certain of the

Debtors' assets to TFI or another successful bidder.  On March 14, 2019, the Court entered an

order [Docket No. 151] (the "Bid Procedures Order") that, among other things, approved certain

bidding and auction procedures and scheduled a final hearing regarding the proposed sale for

April 16, 2019 at 10:00 a.m. (ET) (the "Sale Hearing").  On April 16, 2019, at the conclusion of

the Sale Hearing, the Court entered (i) an order authorizing the sale (the "TFI Sale") of certain of

the Debtors' assets to TFI  [Docket No. 241] (the "TFI Sale Order") and (ii) an order authorizing

the sale (the "Tiger Sale" together with the TFI Sale, the "Sales") of certain of the Debtors'

accounts receivable to Tiger Capital Group, LLC [Docket No. 242] (the "Tiger Sale Order"

together with the TFI Sale Order, the "Sale Orders").  The TFI Sale and the Tiger Sale closed on

April 27, 2019 and April 29, 2019, respectively.

7.     During the sale process, the Committee raised numerous informal objections to

the Sales and a potential Challenge to Prepetition Lien and Claim Matters in connection with the

prepetition secured lenders.[2]  As a result of discussions between the Debtors, the Committee and

---

[2]  The terms "Challenge" and "Prepetition Lien and Claim Matters" shall have the meaning ascribed to them in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rule 4001-2 (i) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (ii) Authorizing the Debtors' Limited Use of Cash Collateral, (iii) Granting Adequate*

the DIP Lender (as defined in the Final DIP Order), the parties reached a global settlement agreement (the "Settlement Agreement") that, among other things, resolved the Committee's informal objections to the Sales and a potential Challenge and provided for the conversion of the Chapter 11 Cases to cases under chapter 7 at the conclusion of the wind-down of the Debtors' business operations and the liquidation of the remaining collateral with the consent of the DIP Lender and in accordance with an approved wind-down budget.  On April 24, 2019, the Debtors filed a motion [Docket No. 250] (the "Settlement Motion"), seeking entry of an order approving the Settlement Agreement.  On May 15, 2019, the Court entered an order approving the Settlement Agreement [Docket No. 300] (the "Settlement Order").

8.     To date, the Debtors have made significant progress in winding down the business operations and liquidating the remaining collateral in accordance with the Settlement Order. Despite the significant progress, however, the Debtors anticipate that the wind-down process will not be completed until July 2019 which is after the current Exclusive Periods.

**RELIEF REQUESTED**

9.     By this Motion, out of an abundance of caution, the Debtors, pursuant to section 1121(d)(1) of the Bankruptcy Code, seek entry of an order extending the periods within which only the Debtors may file a chapter 11 plan and solicitation of acceptances thereof by approximately sixty (60) days.  Unless extended, the Debtors' Plan Period and Solicitation Period (each as defined below) will expire on June 18, 2019[3] and August 19, 2019, respectively. The Debtors seek to extend the Plan Period and Solicitation Period through and including August 19, 2019, and October 18, 2019, respectively, without prejudice to the Debtors' right to seek

_Protection to the Prepetition Secured Parties, and (iv) Granting Related Relief_ [Docket No. 143] (the "Final DIP Order").

[3] Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods shall automatically extend the Exclusive Periods until the Court acts on the Motion without the necessity for entry of a bridge order.

further extensions of the Exclusive Periods (as defined below), as may be appropriate under the circumstances.  This Motion is the Debtors' first request to extend the Exclusive Periods.

### BASIS FOR RELIEF

10.    Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred and twenty (120) days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period").  11 U.S.C. § 1121(b).  Section 1121(c)(3) of the Bankruptcy Code provides that, if a debtor has not filed a plan that has been accepted before one hundred and eighty (180) days after commencement of a chapter 11 case by each class of claims or interests that is impaired under the plan (the "Solicitation Period" and together with the Plan Period, the "Exclusive Periods"), any party in interest may file a competing plan.  11 U.S.C. § 1121(c)(3).  Section 1121(d) permits the Court to extend the Exclusive Periods for "cause."  For the reasons set forth herein, "cause" exists to extend the Exclusive Periods.

**A.    Section 1121(d) of the Bankruptcy Code Permits
the Court to Extend the Exclusive Periods "For Cause"**

11.    A debtor's Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties.  To this end, where the Exclusive Periods prove to be unfeasible timeframes, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for cause.  11 U.S.C. § 1121(d).[4]  Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing

---

[4]  Pursuant to section 1121(d)(1) of the Bankruptcy Code, the Plan Period may not be extended beyond a date that is eighteen (18) months after the commencement of a chapter 11 case.  11 U.S.C. § 1121(d)(1).  Pursuant to section 1121(d)(2), the Solicitation Period may not be extended beyond a date that is twenty (20) months after the commencement of a chapter 11 case.  11 U.S.C. § 1121(d)(2).

interests of a debtor and its creditors.  *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

12.     Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors.  *In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D. N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

13.     In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including:

> (a)  The size and complexity of the debtor's case;
>
> (b)  The necessity of sufficient time to negotiate and prepare adequate information;
>
> (c)  The existence of good-faith progress towards reorganization;
>
> (d)  Whether the debtor is paying its debts as they become due;
>
> (e)  Whether the debtor has made progress negotiating with creditors;
>
> (f)  The length of time a case has been pending;
>
> (g)  Whether the debtor is seeking an extension to pressure creditors; and
>
> (h)  Whether or not unresolved contingencies exist.

14.     The facts and circumstances of these Chapter 11 Cases justify extending the Exclusive Periods, out of an abundance of caution, to provide the Debtors with an unimpeded opportunity to confirm a plan of reorganization with minimal interference in the event that the Chapter 11 Cases are not converted to cases under chapter 7 as contemplated in the Settlement Agreement and Settlement Order.

**B.      Cause Exists for an Extension of the Exclusive Periods in these Chapter 11 Cases**

15.     The Debtors have been operating under the protections of chapter 11 for less than four (4) months.  During this short period of time, the Debtors have worked diligently in an effort to preserve and maximize value of the Debtors' estates for the benefit of the Debtors' creditors, shareholders and other parties in interest.  To that end, since the Petition Date, the Debtors have:  (i) stabilized the business and business operations after the commencement of the Chapter 11 Cases; (ii) obtained necessary "first-day" relief from the Court, including but not limited to obtaining postpetition financing, which was essential to the Debtors' successful transition into chapter 11; (iii) retained professionals; (iv) filed their schedules of assets and liabilities (the "Schedules") and statements of financial affairs (the "Statements"); (v) obtained approval of bidding procedures for the sale of substantially all of their assets and, ultimately, obtained Court approval of the Sales pursuant thereto and closed same; (vi) handled the various other tasks related to the administration of the Debtors' bankruptcy estates and these Chapter 11 Cases; (vii) filed numerous omnibus rejection motions and obtained orders rejecting numerous executory contracts and unexpired nonresidential real property leases that were no longer beneficial to the Debtors' estates; (viii) worked with and responded to numerous requests and inquiries from the Committee as well as other creditors and other parties in interests; (ix) responded to various discovery requests from the Committee; and (x) obtained entry of the Settlement Order that provides for the orderly disposition of the Chapter 11 Cases by converting

01:24497721.1

them to cases under chapter 7 at the conclusion of the wind-down of the Debtors' business

operations.  In light of the Debtors' accomplishments thus far, and viewed in light of the various

factors considered by courts in determining whether "cause" exists for an extension of the

Exclusive Periods, the Debtors believe that each of the factors relevant to these Chapter 11 Cases

weighs heavily in favor of the relief requested herein.

(a)      <strong>The Size, Complexity, and Duration of these Chapter 11 Cases</strong>

16.      The Debtors' Chapter 11 Cases are sufficiently large and complex to warrant the

requested extension of the Exclusive Periods.  Prior to the Petition Date, the Debtors were

leading providers nationwide of ground and air transportation, warehousing and courier services,

providing "last mile" delivery services, often consisting of controlled substances or otherwise

highly sensitive materials to over 800 customers nationwide.  Their vast operations enabled the

Debtors to provide same-day delivery service to more than 77% of the U.S. population and next-

day service to approximately 97% of the U.S. population.  Additionally, the Debtors were also

leading providers nationwide of medical logistics services related to:  (i) on-site drug and alcohol

testing that includes random, pre-employment and post-incident blood/alcohol testing; (ii) on-site

phlebotomy services; (iii) biometric and phlebotomy venipuncture draws related to company

wellness programs and (iv) policy development and assessment of alcohol and drug testing

programs.  As set forth in greater detail in the First Day Declaration, on the Petition Date, the

Debtors owed approximately $38.93 million in prepetition secured debt and commenced these

Chapter 11 Cases, in part, due to the impending maturities and tightening liquidity.

17.      As discussed above, during the less than four (4) months since the

commencement of the Chapter 11 Cases, the Debtors have devoted substantial resources to,

among other things, stabilizing business operations, addressing critical case management issues,

consummating the Sales and negotiating the Settlement Agreement that provides for the orderly disposition of these Chapter 11 Cases.  Therefore, in light of the fact that these Chapter 11 Cases have been pending for less than four (4) months, the complexity and duration factors weigh in favor of allowing the Debtors to extend the Exclusive Periods.

### (b)    Good Faith Progress Made in these Chapter 11 Cases

18.     The Debtors have made significant and material progress in the Chapter 11 Cases and do not seek the extension of the Exclusive Periods as a means to exert pressure on the relevant parties in interest, but rather to permit the orderly wind-down of the business operations and disposition of the Chapter 11 Cases pursuant to the terms of the Settlement Agreement and Settlement Order, while, out of an abundance of caution, preserving the Debtors' ability to negotiate and confirm a plan of reorganization with minimal interference in the event that the Chapter 11 Cases are not converted to cases under chapter 7 as contemplated in the Settlement Agreement and Settlement Order.  Accordingly, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

### (c)    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information

19.     As set forth above, since the Petition Date, the Debtors and their professionals have focused much of their time, energy and resources on smoothly transitioning into chapter 11, stabilizing their business operations, consummating the Sales and negotiating the Settlement Agreement.  To that end, the Debtors prepared and prosecuted numerous motions for first and second day relief, as well as prepared and filed their Schedules and Statements and required monthly operating reports.  In addition, the Debtors and their professionals also focused substantial time and resources on obtaining approval of and consummating the Sales, procuring debtor-in-possession financing, gaining the use of cash collateral, and timely complying with the

Committee's formal and informal discovery requests.  Most importantly, however, the Debtors

and their professionals spent significant time and efforts negotiating the Settlement Agreement

and obtaining entry of the Settlement Order which provides for the orderly disposition of the

Chapter 11 Cases.  The Debtors believe that, in light of the progress that they have made in these

Chapter 11 Cases over the past four months, it is reasonable to request additional time to

negotiate and finalize a plan of reorganization in the event that the Chapter 11 Cases are not

converted to cases under chapter 7 as contemplated in the Settlement Order.  Accordingly, the

Debtors submit that this factor weighs in favor of allowing the Debtors to extend the Exclusive

Periods.

### (d)    The Debtors are Paying Their Debts as They Come Due

20.    The requested extension of the Exclusive Periods will not prejudice the legitimate

interests of postpetition creditors, as the Debtors continue to make timely payments on their

undisputed postpetition obligations.  As such, this factor also weighs in favor of allowing the

Debtors to extend the Exclusive Periods.

### (e)    The Debtors are Not Seeking an Extension to Pressure Creditors

21.    The Debtors have no ulterior motive in seeking an extension of the Exclusive

Periods.  The Debtors believe that they have worked diligently over the past few months to

maximize the value of their assets for all stakeholders and require the extension sought by this

Motion in order to exit chapter 11 in an orderly and efficient manner.  The Debtors are not

seeking an extension to pressure the creditors, shareholders or other parties in interest.  In fact,

the Settlement Agreement and the Settlement Order approving same are the result of good faith

negotiations between the Debtors, the Committee and the DIP Lender.

01:24497721.1

      (f)      **Termination of the Debtors' Exclusive Periods Would Adversely Impact these Chapter Cases**

22.      Termination of the Debtors' Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and the progress of these Chapter 11 Cases.  In effect, if this Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party in interest would be free to propose a chapter 11 plan for the Debtors in direct contravention of the Settlement Order.  Such a ruling would foster a chaotic environment with no central focus and likely cause substantial, if not irreparable, harm to the Debtors' efforts to preserve and maximize the value of their estates.

23.      Based upon the foregoing, the Debtors respectfully submit that cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including August 19, 2019 and October 18, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## NOTICE

24.      Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors prepetition and postpetition secured lender; (iii) counsel to the Committee; and (iv) all parties who have filed a notice of appearance and requested service of pleadings pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:24497721.1

## NO PRIOR REQUEST

25.    The Debtors have not previously sought the relief requested herein from this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and the Proposed Order and such other and further relief as the Court may deem just and proper.

Dated:    Wilmington, Delaware
          June 12, 2019

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Donald J. Bowman, Jr.*

Joseph M. Barry (No. 4221)
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)
Jordan E. Sazant (No. 6515)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253

*Counsel for the Debtors and Debtors in Possession*